## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MAXIMO FERNANDEZ, ARTURO
CORDONA, SERGIO DURAN, RODRIGO
PUENTES, and ISAIAS VILLANUEVA, on
behalf of themselves and all others similarly
situated,

                Plaintiffs,

v.

KERRY INC.,

                Defendant.

No. 1:17-cv-08971

**Hon. Jorge L. Alonso**
Magistrate Judge Martin

**JURY TRIAL DEMANDED**

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiffs Maximo Fernandez, Arturo Cordona, Sergio Duran, Rodrigo Puentes, and

Isaias Villanueva bring this Class Action Complaint and Demand for Jury Trial against

Defendant Kerry Inc. ("Kerry" or "the Company") to put a stop to its unlawful collection,

use, and storage of Plaintiffs' and the proposed Class's sensitive biometric data. Plaintiffs

allege as follows based upon personal knowledge as to themselves and their own acts and

experiences and, as to all other matters, upon information and belief, including investigation

conducted by their attorneys.

### NATURE OF THE ACTION

1.      This is an action under the Biometric Information Privacy Act, 740 ILCS 14/ l,

*et seq.* ("BIPA") brought by Plaintiffs on behalf of a putative class of similarly-situated

individuals, namely, all Illinois citizens who performed work for Kerry in Illinois who had

their fingerprints improperly collected, captured, received, otherwise obtained or disclosed

by Kerry. Plaintiffs also allege common law negligence based, at a minimum, on the standard of care created and codified by BIPA.

2.    Kerry is a multinational public food company.

3.    In Illinois, several hundred individuals perform work for Kerry from at least three locations, including Melrose Park (the location where Plaintiffs worked), Elk Grove Village, and Carol Stream.

4.    Since approximately 2011, individuals who perform work for Kerry in Illinois have been required to scan their fingerprint in Kerry's time clocks. That is because Kerry uses a biometric time tracking system that requires employees to use their fingerprint as a means of authentication, instead of key fobs or identification cards.

5.    While there are benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards-which can be changed or replaced if stolen or compromised-fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes workers to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, workers have no means by which to prevent identity theft and unauthorized tracking.

6.    Recognizing the need to protect its citizens from situations like these, Illinois enacted the BIPA specifically to regulate companies that collect and store Illinois citizens' biometrics such as fingerprints.

7.    Kerry disregards its workers' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Kerry has violated (and continues to violate) the BIPA because it did not (and continues not to):

- Properly inform Plaintiffs and Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiffs or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

8.     Accordingly, this Complaint seeks an Order: (i) declaring that Defendant's conduct violates BIPA; (ii) declaring that the Defendant's conduct is negligent; (iii) requiring Defendant to cease the unlawful activities addressed herein; and (iv) awarding liquidated damages to Plaintiffs and the proposed Class.

## PARTIES

9.     Plaintiff Maximo Fernandez is a natural person and citizen of the State of Illinois.  He worked for Kerry from 1999 until in or around October 2017.

10.     Plaintiff Arturo Cordona is a natural person and citizen of the State of Illinois. He worked for Kerry from 2004 until in or around October 2017.

11.     Plaintiff Sergio Duran is a natural person and citizen of the State of Illinois. He worked for Kerry from 1998 until in or around October 2017.

12.     Plaintiff Rodrigo Puentes is a natural person and citizen of the State of Illinois.  He worked for Kerry from 2000 until in or around October 2017.

13.     Plaintiff Isaias Villanueva is a natural person and citizen of the State of Illinois.  He worked for Kerry from 2004 until in or around November 2017.

14.     Defendant Kerry is a Delaware company registered to do business in the State of Illinois (File No. 58174017).  Kerry conducts significant business in the State of Illinois.

## JURISDICTION AND VENUE

15.     The Illinois State Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois, has committed tortious acts in Illinois, and is registered to conduct business in Illinois. Additionally, this Court has jurisdiction over Plaintiffs because they are residents of the state of Illinois.

16.     Venue is proper in Cook County because Defendant is a citizen of Illinois that conducts business transactions in Cook County.  Plaintiffs are also citizens of Cook County.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

17.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology.  *See* 740 ILCS 14/5.

18.     In late 2007, a biometrics company called Pay by Touch - which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions - filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records - which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data - could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy

also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

19.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008.  *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

20.    The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information," unless *it first:*

    (1)    informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    (2)    informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    (3)    receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

21.    In the employment context, a "written release" specifically means "a release executed by an employee as a condition of employment."  740 ILCS 14/10.

22.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints.  *See* 740 ILCS 14/10.  Biometric information is

separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

23.     The BIPA also established standard for how employers must handle individuals' biometric identifiers and biometric information: "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines." 740 ILCS 14/15(a).

24.     Ultimately, BIPA is simply an informed consent statute, which mandates that entities wishing to collect, store, and/or use biometric information must put in place certain reasonable safeguards to protect individuals' privacy. *See* 740 ILCS 14/15.

## II.     Defendant Violates the Biometric Information Privacy Act.

25.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented using biometric data as an authentication method stopped doing so. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to the public's discomfort with the use of its biometric data. Despite the recognized dangers of using biometric data in the private sector, employers have failed to follow retailers' leads in dropping it as an identification method. In

fact, many employers now require their employees to register their biometric data, viewing it as a cost-effective method of authentication.

26.     Unfortunately, Kerry failed to take note of the retail industry's trend in recognizing the dangers in storing biometric identifiers and the passage of Illinois law governing the collection and use of biometric data.  Kerry continues to collect, store, and use its workers' biometric data in violation of the BIPA.

27.     Specifically, since the implementation of the biometric data system, individuals working at Kerry have been required to have their fingerprint scanned in order to enroll them in Kerry's fingerprint database.

28.     Kerry uses a worker time tracking system that requires workers to use their fingerprint as a means of authentication.  Unlike a traditional time clock, workers have to use their fingerprints to "punch" in to or out of work.

29.     Unfortunately, Kerry fails to inform its workers the extent of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

30.     Kerry similarly fails to provide its workers with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' biometric data when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. A worker who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Kerry's databases - or if they ever will be.

31.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Kerry's - where workers are aware that they are providing biometric

identifiers but are not aware of to whom or the full extent of the reasons they are doing so - is so dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing a critical point: it is crucial for people to understand when providing biometric identifiers who exactly is collecting their biometric data, where it will be transmitted to, for what purposes, and for how long. But Kerry disregards these obligations, and instead unlawfully collects, stores, and uses its workers' biometric identifiers and information.

32.     Ultimately, Kerry not only disregards its workers' privacy rights, but it also violates BIPA.

**III.     Plaintiffs' Experience.**

33.      Plaintiffs performed worked for Kerry through 2017.  During the time since Kerry implemented its biometric system in or around 2011, the Plaintiffs worked at Defendant's Melrose Park location.

34.     At the location where Plaintiffs worked, and upon information and belief at all Illinois Kerry locations, Kerry's practices regarding its biometric systems are identical as to all individuals performing work for the Company.

35.     After Kerry implemented its biometric system in or around 2011, Plaintiffs were required to allow Kerry to collect and/or capture their fingerprints so that Kerry could store them for use moving forward as an authentication method and to track their time.

36.     Kerry subsequently stored Plaintiffs' fingerprint data in its databases.

37.     Each time Plaintiffs began and ended their workdays they were required to scan their fingerprints in order to "clock in" and "clock out" of work.

38.     Kerry never informed Plaintiffs of the specific limited purposes or length of

time for which Kerry collected, stored, or used their fingerprints.

39.     Kerry never informed Plaintiffs of any biometric data retention policy developed by Kerry, nor did Kerry ever informed them of whether Kerry will ever permanently delete their fingerprints.

40.     Kerry never provided Plaintiffs with a written release allowing Kerry to collect or store their fingerprints, and Plaintiffs never signed any such release.

41.     Plaintiffs have continuously and repeatedly been exposed to the risks, harmful conditions, and violations of privacy through Kerry's violations of the BIPA.

42.     As a result of Kerry's conduct, Plaintiffs have experienced bodily injury in the form of mental anguish. For example, Plaintiffs experience mental anguish and injury when thinking about what would happen to their biometric data if Kerry went bankrupt, whether Kerry's biometric system is susceptible to hacking or other theft, whether Kerry will ever delete their biometric information, and whether (and to whom) Kerry shares their biometric information.

## CLASS ALLEGATIONS

43.     Upon information and belief, the practices, policies, and consequences pertinent to Kerry's biometric system as described above, in Paragraphs 34-42 in particular, applied to each Class member.

44.     Class Definition: Plaintiffs bring this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a class of similarly situated individuals, defined as follows:

> **All Illinois citizens who performed work for Kerry in the State of Illinois, who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Kerry.**

45. **Numerosity:** The exact number of Class members is unknown to Plaintiffs at this time, but may exceed 200 individuals. It is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of workers who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records

46. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

- whether Kerry collected, captured, or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information;

- whether Kerry collected, captured, or otherwise obtained Plaintiffs' and the Class' biometric identifiers or biometric information;

- whether Kerry properly informed Plaintiffs and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

- whether Kerry obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs' and the Class's biometric identifiers or biometric information;

- whether Kerry has disclosed or re-disclosed Plaintiffs' and the Class's biometric identifiers or biometric information to any third parties;

- whether Kerry has sold, leased, traded, or otherwise profited from Plaintiffs and the Class's biometric identifiers or biometric information;

- whether Kerry developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever

occurs first;

- whether Kerry complies with any such written policy (if one exists);

- whether Kerry used Plaintiffs' and the Class's fingerprints to identify them; and

- whether Kerry's violations of the BIPA were committed negligently.

47.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.  Plaintiffs and their counsel are committed to vigorously prosecuting their action on behalf of the members of the Class, and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

48.     **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be

fostered and uniformity of decisions will be ensured.

## COUNT I
### Violation of 740 ILCS 14/1, et seq.
### (On Behalf of Plaintiffs and the Class)

49.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

50.    BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored , and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b) (emphasis added).

51.    BIPA also prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(l).

52.    BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and-importantly-deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (i.e., when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. See 740 ILCS 14/ 1 5(a).

53.    Kerry failed and continues to fail to comply with these BIPA mandates, thus committing at least four violations of BIPA with respect to each putative class member.

54.     Kerry qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

55.     Plaintiffs and the Class are individuals who had their "biometric identifiers" collected by Kerry (in the form of their fingerprints) by way of Defendant's biometric scanner, i.e. time clock. *See* 740 ILCS 14/10.

56.     Plaintiffs' and the Class's biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

57.     BIPA, which is an Illinois State law, creates rights and protections for workers in the state.

58.     Kerry violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its customers' biometric identifiers and biometric information.

59.     Kerry violated 740 ILCS 14/15(b)(l) by failing to inform Plaintiffs and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

60.     Kerry violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiffs and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

61.     Kerry violated 740 lLCS 14/15(b)(3) by failing to obtain written releases from Plaintiffs and the Class before it collected, used, and stored their biometric identifiers and biometric information.

62.     By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Kerry violated BIPA and violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in

the BIPA, 740 ILCS 14/1, et seq.

WHEREFORE, Plaintiffs, individually and on behalf of other similarly situated individuals, respectfully requests that this Honorable Court enter judgment in favor of Plaintiffs and against Defendant, and grant Plaintiffs the following relief:

a. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

b. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Kerry to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

c. Awarding liquidated damages to each per person whose rights were violated under BIPA, pursuant to 740 ILCS 14/20;

d. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees and costs;

e. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

f. Any further relief that is deemed just and equitable.

### COUNT II
### Negligence
### (On Behalf of Plaintiff and the Class)

63. Plaintiff incorporates the foregoing allegations as though fully set forth herein.

64. Kerry owed Plaintiffs and the Class members a duty of reasonable care, as (at a minimum) set forth in BIPA. That duty required that Kerry exercise reasonable care in the collection and use of Plaintiff's and the Class members; biometric identifiers or biometric in formation. Specifically, Kerry was required to collect, retain, store, and use Plaintiffs' and the Class's biometric information and identifiers in compliance with the standards set forth by the BIPA.

65. Additionally, Kerry owed Plaintiffs a heightened duty - under which Kerry

assumed a duty to act carefully and not put Plaintiffs at undue risk of harm - because of the employment relationship of the Parties.

66.     Kerry breached its duties by failing to implement reasonable procedural safeguards around the collection and use of Plaintiffs' and the Class's biometric identifiers and biometric information.

67.     Specifically, Kerry breached its duties by failing to properly inform Plaintiffs in writing of the specific purpose or length of time for which his fingerprint was being collected, stored, and used.

68.     Kerry also breached its duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' or the Class's fingerprints.

69.     Kerry's breach of its duties proximately caused and continues to cause Plaintiffs mental anguish and mental injury. For example, Plaintiffs experience mental anguish when thinking about what would happen to their biometric identifiers or information if Kerry went bankrupt, whether Kerry will ever delete their biometric identifiers or information, the susceptibility of their biometric information to theft, and whether (and to whom) Kerry shares their biometric identifiers or information.

70.     Upon information and belief, the Class experienced and continues to experience the same injuries as the Plaintiffs.

71.     Accordingly, Plaintiffs seek an order declaring that Kerry's conduct constitutes negligence, and awarding Plaintiffs and the Class damages in an amount to be calculated at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court enter an Order:

a.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel;

b. Declaring that Kerry's actions, as set out above, violate the BIPA;

c. Awarding statutory damages for each of Defendant's violations of the BlPA, pursuant to 740 ILCS 14/20;

d. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Kerry to collect, store, and use biometric identifiers or biometric information in compliance with the BlPA;

e. Declaring that Kerry's actions, as described above, constitute either negligence or reckless disregard;

f. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees and costs;

g. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

h. Awarding such other and further relief as equity and justice may require.

Dated: February 9, 2018       Respectfully submitted,

Firm No. 58616             MAXIMO FERNANDEZ, ARTURO
Alejandro Caffarelli         CORDONA, SERGIO DURAN, RODRIGO
Lorrie T. Peeters           PUENTES, and ISAIAS VILLANUEVA, on
Alexis D. Martin            behalf of themselves and all others similarly
Caffarelli & Associates Ltd.    situated,
224 N. Michigan Ave., Ste. 300
Chicago, IL  60604
Tel. (312) 763-6880        By: /s/ Alejandro Caffarelli
                       Attorney for the Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on February 9, 2018, the foregoing First Amended Complaint was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to:

Melissa Siebert, Esq.
Erin Bolan Hines, Esq.
Suzanne M. Alton de Eraso, Esq.
Bonnie Keane DelGobbo, Esq.
Baker & Hostetler LLP
191 N. Wacker Dr., Ste. 3100
Chicago, IL 60606
(312) 416-6200

<u>/s/ Alejandro Caffarelli</u>
One of Plaintiff's Attorneys