# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAXIMO FERNANDEZ, ARTURO CORDONA, SERGIO DURAN, RODRIGO PUENTES, and ISAIAS VILLANUEVA, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| KERRY, INC., | ) ) |
| Defendant. | ) ) |

No. 17 C 8971

Judge Jorge L. Alonso

## MEMORANDUM OPINION AND ORDER

After plaintiffs filed a purported class-action complaint in the Circuit Court of Cook County, defendant removed the case here. Before the Court is plaintiffs' motion to remand. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

On November 7, 2017, five plaintiffs (Maximo Fernandez, Arturo Cordona, Sergio Duran, Rodrigo Puentes and Isaias Villanueva), each of whom is a citizen of Illinois (Complt. ¶¶ 9-13/Docket 1-1 at 10) filed in the Circuit Court of Cook County a suit alleging that defendant Kerry, Inc. violated Illinois's Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Plaintiffs allege that defendant's time-tracking system requires employees "to use their fingerprints to 'punch' in to or out of work." (Complt. ¶ 28/Docket 1-1 at 14).

Plaintiffs seek to represent a class of "200-500 individuals" (Complt. ¶ 46/Docket 1-1 at 17) who, like plaintiffs, were required to use their fingerprints to clock in and out of work each day. In Count I, plaintiffs asserted that defendant violated BIPA by failing to inform plaintiffs that their biometric information was being collected and stored; by failing to obtain plaintiffs'

consent for such collection and storage; by failing to inform plaintiffs as to the purpose and length of time their biometric information would be collected and stored; and by failing to provide a retention policy. (Complt. ¶¶ 58-61/Docket 1-1 at 12-13). In Count II, plaintiffs asserted that defendant was negligent.[1]

On December 13, 2017, defendant removed the case to this Court, citing 28 U.S.C. §§ 1332(a), 1441 and 1446. (Docket 1 at 1). In its notice of removal, defendant stated that it is a Delaware corporation with a principal place of business in Wisconsin. Defendant also alleged that the amount in controversy is greater than $75,000.00. In support of that allegation, defendant stated that BIPA provides statutory damages of $1,000.00 to $5,000.00 per violation and that each plaintiff punched in via fingerprint at least 75 times. Defendant also noted that the amount in controversy includes "the cost a defendant incurs in complying with injunctive relief," *Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004), and that plaintiffs seek injunctive relief.

On November 7, 2019, plaintiffs filed a motion to remand. Plaintiffs state:

> Plaintiffs have pled four violations of BIPA. Therefore, with damages of up to $5,000 per violation, each Plaintiff's maximum potential damages reaches just $20,000.00.

(Plf's Brief at 4/Docket 81 at 4) (citations omitted).

## II. DISCUSSION

Plaintiffs move to remand, arguing that this Court lacks jurisdiction. Specifically, plaintiffs argue that: (1) the Court lacks diversity jurisdiction in that the amount in controversy is

---

[1] Plaintiffs have since filed an amended complaint. Although defendant filed an answer to the original complaint, it has not yet answered the amended complaint. Defendant filed a motion to dismiss that was denied without prejudice when the case was stayed. When the Court lifted the stay, it set a briefing schedule for a new motion to dismiss; but, before the deadline, plaintiffs moved to remand.

2

less than $75,000.00; and (2) plaintiffs have no standing. Defendant argues the Court has subject-matter jurisdiction on a number of bases, including diversity, federal question and the Class Action Fairness Act. Defendant also argues that plaintiffs' motion for remand comes too late.

### A. The motion is timely.

The Court first notes that it agrees with plaintiffs that their motion for remand is timely. The relevant statute provides:

> A motion to remand the case on *the basis of any defect other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c) (emphasis added). The language is plain that the 30-day deadline does not apply to motions for remand based on subject-matter jurisdiction. *See GE Betz, Inc. v. Zee Co., Inc.*, 718 F.3d 615, 625 (7th Cir. 2013) ("Of course, a plaintiff may object to removal based on a jurisdictional defect at any time."). It is only a motion to remand based on non-jurisdictional defects—such as the forum-defendant rule [28 U.S.C. § 1441(b)(2) ("[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"] or the deadlines for filing notices of removal [28 U.S.C. § 1446(b)(1), (b)(2)(B)]—that must be brought within 30 days. *GE Betz*, 718 F.3d at 626 ("Consequently, if a plaintiff fails to raise a forum-defendant objection within thirty days of removal, the plaintiff waives the right to raise the objection later."). Here, plaintiffs' motion to remand is based on subject-matter jurisdiction, so it is timely.

Plaintiffs argue that the Court lacks jurisdiction in two respects. First, plaintiffs argue that they lack standing to sue in federal (as opposed to state) court. Second, plaintiffs argue that

3

the case was not removable, because the case does not fall within the Court's original jurisdiction. Defendant, as the removing party, "bears the burden of establishing federal jurisdiction." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017). Defendant must show jurisdiction was present at the time of removal. *Hukic v. Aurora Loan Services*, 588 F.3d 420, 427 (7th Cir. 2009) (courts "analyze [their] jurisdiction at the time of removal, as that is when the case first appears in federal court").

      **B.      The plaintiffs have standing.**

The Court first considers plaintiffs' argument as to standing. Article III of the United States Constitution limits a federal court's power to "Cases" and "Controversies," and plaintiffs without standing present neither. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish the constitutional requirements of standing, plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 1547 (2016). To show injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, __ U.S. at __, 136 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

Plaintiffs argue that their case presents merely a statutory violation with no concrete harm (or risk of harm), such that they lack standing. The Court cannot agree. Defendant has put forth evidence that every named plaintiff was a member of a union and subject to a collective bargaining agreement. The Seventh Circuit has held that, in such circumstances, plaintiffs asserting BIPA violations based on fingerprint time clocks have Article III standing, because the

4

claim could result in additional pay or benefits or in the elimination of the practice. *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). There, the Seventh Circuit explained:

> [T]he stakes in both suits include whether the air carriers can use fingerprint identification. If the unions have not consented, or if the carriers have not provided unions with required information, a court or adjustment board may order a change in how workers clock in and out. The prospect of a material change in workers' terms and condition of employment gives these suits a concrete dimension that *Spokeo*, *Groshek*, and *Casillas* lacked. Either the discontinuation of the practice or the need for the air carriers to agree to higher wages to induce unions to consent, presents more than a bare procedural dispute.

*Miller*, 926 F.3d at 902. Just so here. Plaintiffs have standing.

### C. The Court has subject-matter jurisdiction.

Next, the Court considers plaintiffs' argument as to subject-matter jurisdiction. Generally (aside from exceptions—such as the forum-defendant rule—that do not apply here), "any civil action brought in a State court of which the district courts of the United States have *original jurisdiction*, may be removed . . ." 28 U.S.C. § 1441(a) (emphasis added). District courts have original jurisdiction over cases involving federal questions. 28 U.S.C. § 1331 ("The district courts shall have *original jurisdiction* of all civil actions arising under the Constitution, laws, or treaties of the United States.") (emphasis added). District courts also have original jurisdiction over cases meeting the requirements of the diversity statute and the Class Action Fairness Act. 28 U.S.C. § 1332(a) ("The district courts shall have *original jurisdiction* of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different states") (emphasis added); 28 U.S.C. § 1332(d)(2) ("The district courts shall have *original jurisdiction* of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant") (emphasis added).

5

1.     **Diversity**

In its notice of removal, defendant asserted that the Court has original jurisdiction over the case, because it involves citizens of different states and the amount in controversy is greater than $75,000. It is clear that the case involves citizens of different states, because all plaintiffs are citizens of Illinois, while defendant is a citizen of Delaware (its state of incorporation) and Wisconsin (the site of its principal place of business).

As for the amount in controversy, although the case was filed by five plaintiffs, for purposes of § 1332(a), "the separate claims of multiple parties cannot be aggregated to meet the jurisdiction requirement." *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007). Plaintiffs argue that each plaintiff can collect no more than $20,000.00—four claims each multiplied by statutory damages of $5,000.00 each. Had plaintiffs stipulated, before removal, that the claims were worth only $20,000.00 per plaintiff, then the Court would agree that it does not have diversity jurisdiction under § 1332(a). *St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 & 292 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction. . . . And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."). Plaintiffs did not so stipulate before defendant filed its notice of removal.

For its part, defendant asserts that each plaintiff used a fingerprint scan at least 75 times, such that, to the extent each plaintiff could recover between $1,000.00 and $5,000.00 for each scan, the amount in controversy exceeds $75,000.00. Remand is appropriate only where "it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Clark*, 473 F.3d at 711 (citations omitted). The law is not clear as to whether, under BIPA, a plaintiff

can recover for every fingerprint scan.[2]  Accordingly, the Court agrees that plaintiffs have not shown it is legally impossible to recover an amount greater than $75,000.00.  *See Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp.3d 766, 770 (N.D. Ill. 2019) ("[B]ecause [plaintiff] has not shown that it is *legally impossible* for her to recovery $5,000 per fingerprint scan, a position plaintiff should be loath to take in light of the undecided interpretation of BIPA's damages provision, the Court leaves that determination to another day.  At this stage, such recovery, although uncertain, remains plausible based on [plaintiff's] allegations and an expansive reading of BIPA's damages provisions.").

The Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), and removal was proper.

### 2. Class Action Fairness Act

In addition, the Court has jurisdiction under the Class Action Fairness Act, although plaintiff does not think the Court should consider that issue owing to the fact that defendant did not mention the Class Action Fairness Act in its notice of removal.  Plaintiffs insist that a defendant may not amend its notice of removal to add other bases of jurisdiction after the original 30-day window for filing a notice of removal.

The Court disagrees and will consider alternate bases of jurisdiction.  First, the removal statute sets out a 30-day deadline for *filin*g a notice of removal, but it says nothing about a deadline for *amendments* to a notice of removal.  28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action shall be *filed* within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such

---

[2] Plaintiffs have not cited a case that decided the limits of damages under BIPA, and they agree the issue has not been decided.

action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.") (emphasis added).  The Court will not read an additional deadline into the statute.  *See GE Getz*, 718 F.3d at 624 (declining to adopt a party's suggested reading of a statute because that party's "interpretation requires reading additional words into the statute").  Such a reading would also conflict with this Court's usual practice: *routinely*, this Court not only allows amendments to notices of removal after the 30-day window but *requires* such amendment where a defendant fails to allege adequately a basis for the Court's jurisdiction in the original notice of removal.

Furthermore, contrary to plaintiffs' argument, a federal statute explicitly allows jurisdictional amendments at any time in the district court or even on appeal.  Specifically, a statute provides:

> Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.

28 U.S.C. § 1653.  The Seventh Circuit has explicitly allowed amendment to notices of removal on appeal.  *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) ("We directed [defendant] to amend the jurisdictional allegations in its notice of removal, a step that can be taken even while a case is on appeal.") (citing 28 U.S.C. § 1653); *see also Dancel v. Groupon, Inc.*, 940 F.3d 381, 384-85 (7th Cir. 2019) ("As long as the existence of subject-matter jurisdiction is either apparent from the record or cured through amendment of the notice of removal, we can proceed") (internal citations omitted).[3]

---

[3] This Court is not suggesting the chance to amend a notice of removal could never be waived. Where a defendant insisted, even at oral argument on appeal, that diversity jurisdiction did not exist and instead "plac[ed] all their jurisdictional eggs in the [federal-question] basket," the Seventh Circuit ordered remand.  *Gavin v. AT&T Corp.*, 464 F.3d 634, 640 & 641 (7th Cir.

8

Thus, the Court can consider whether the Class Action Fairness Act provides an alternate basis of jurisdiction. The Court concludes that it does. That statute provides:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]

28 U.S.C. § 1332(d)(2). The Court has already concluded that the named plaintiffs are citizens of a state different from defendant.

The case also meets the amount-in-controversy requirement. Under § 1332(d), unlike under § 1332(a), "the claims of the individual class members are aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6). Thus, even if plaintiffs are correct that each plaintiff can obtain only $20,000, then the amount in controversy would be $10,000,000.00, because plaintiffs allege the class contains between 200 and 500 members.[4] Accordingly, the Court has jurisdiction under the Class Action Fairness Act. The case was removable.

### 3. Federal question

Finally, defendant asserts that this Court has jurisdiction, because plaintiffs' complaint presented a federal question. On its face, plaintiffs' complaint presented only state-law claims, and a "case may not be removed to federal court on the basis of a federal defense." *Franchise*

---

2006). But where a defendant affirmatively argues for an alternate basis for jurisdiction, it can be considered. *Hukic v. Aurora Loan Services*, 588 F.3d 420, 430 (7th Cir. 2009) ("[U]nlike in *Gavin v. AT&T Corp.*, where the defendant never argued an alternate basis of federal jurisdiction even when pressed, the defendants here affirmatively argued to us—the first time that jurisdiction was raised as an issue—that federal question jurisdiction exists. We are satisfied that we have jurisdiction, and we will proceed to the merits.")

[4] Accordingly, plaintiffs have also alleged a sufficient number of class members to fall within the Class Action Fairness Act. 28 U.S.C. § 1332(d)(5)(B).

*Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust Fund of So. Cal.*, 463 U.S. 1, 14 (1983). Where, however, "a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd.*, 463 U.S. at 24. Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, is one statute that preempts completely. *Id.* at 23; *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims preempted by § 301 of the LMRA.").

Where a state-law claim requires interpretation of a collective bargaining agreement, it is preempted by § 301 of the LMRA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("We hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law.") (citations omitted). The upshot it that where a state-law claim "requires interpretation of the CBA, § 301 preempts the claim and converts it into a § 301 claim." *Healy v. Metropolitan Pier and Exposition Authority*, 804 F.3d 836, 842 (7th Cir. 2015).

Defendant argues that the Court has federal-question jurisdiction over this case, because plaintiffs' BIPA claim is preempted by § 301 of the LMRA. The Court agrees. The Seventh Circuit recently concluded that BIPA claims based on fingerprint time clocks were preempted by the Railway Labor Act. *Miller*, 926 F.3d 898. It explained:

> [T]here can be no doubt that how workers clock in and out is a proper subject of negotiations between unions and employers—is, indeed, a mandatory subject of bargaining.
> \* \* \*
> A state cannot remove a topic from the union's purview and require direct bargaining between individual workers and management. And Illinois did not try.

> Its statute provides that a worker *or an authorized agent* may receive necessary notices and consent to the collection of biometric information.
>
> * * *
>
> [O]ur plaintiffs assert a right in common with all other employees, dealing with a mandatory subject of bargaining. **It is not possible even in principle to litigate a dispute about how an air carrier acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf**. . . . [I]f a dispute necessarily entails interpretation or administration of a collective bargaining agreement, there's no room for individual employees to sue under state law—in other words, state law is preempted to the extent that a state has tried to overrule the union's choices on behalf of the workers.

*Miller*, 926 F.3d at 903-4 (bold emphasis added) (concluding "[defendant] was entitled to remove the suit to federal court under federal-question jurisdiction").

The employees in *Miller* were covered by the Railway Labor Act, rather than the NLRA, but the Supreme Court has said the preemption standard is essentially the same under either. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). In any case, the important point is that the Seventh Circuit has concluded that it is not possible to resolve a BIPA dispute over fingerprint time clocks without reference to the collective bargaining agreement. Because plaintiffs' BIPA claim necessarily requires interpretation of the collective bargaining agreement, it is preempted by § 301 of the LMRA.[5] This Court has original jurisdiction over the claim, and the case was removable.

For all of these reasons, the Court has jurisdiction over this case, and plaintiffs' motion to remand is denied.

---

[5] This Court is not alone in reaching this conclusion. *Gray v. The Univ. of Chi. Med. Center, Inc.*, Case No. 19-cv-4229, 2020 WL 1445608 at *4 (N.D. Ill. March 25, 2020) ("Plaintiff's claims under BIPA are preempted by Section 301 of the LMRA").

11

## III. CONCLUSION

For the reasons set forth above, the Court denies plaintiffs' motion [81] to remand. Defendant is granted 21 days to file an amended notice of removal. Defendant's deadline to answer or otherwise plead is May 22, 2020. If defendant files a motion to dismiss by that deadline, plaintiffs' response is due June 19, 2020, and defendant's reply is due July 6, 2020.

SO ORDERED.                                         ENTERED: April 10, 2020

                                                               JORGE L. ALONSO
                                                               United States District Judge