IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Maximo Fernandez, Arturo Cordona, Sergio Duran, Rodrigo Puentes, and Isaias Villanueva,

                Plaintiffs,

      v.

Kerry, Inc.,

               Defendant.

No. 17-cv-08971
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Maximo Fernandez, Arturo Cordona, Sergio Duran, Rodrigo Puentes, and Isaias Villanueva (collectively, Plaintiffs), former employees of Kerry, Inc., (Defendant) bring this proposed class action against Defendant for alleged violations of the Illinois Biometric Information Privacy Act (BIPA) and for negligence based on Defendant's alleged violations of BIPA. R. 23, Am. Compl.[1] Defendant moved to dismiss the amended complaint with prejudice on preemption grounds. R. 102, Def.'s Mot. Dismiss. For the following reasons, Defendant's motion to dismiss is granted, but the amended complaint is dismissed without prejudice.

## Background

Plaintiffs worked as production employees at Defendant's Melrose Park plant from the late 1990s and early 2000s until October or November 2017. Am. Compl.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

¶¶ 9–13; R. 85-1, Wilson Decl. ¶5.[2] Defendant is a multinational public food company. Am. Compl. ¶ 2. Since approximately 2011, Defendant has collected and stored employees' fingerprint data, and requires employees to scan their fingerprints to "punch" into and out of work. *Id.* ¶¶ 28, 35–37. Fingerprints are considered "biometric identifiers" under BIPA. 740 ILCS 14/10. Plaintiffs seek to represent a class of "[a]ll Illinois citizens who performed work for Kerry in the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Kerry" (the Class). Am. Compl. ¶ 44. Plaintiffs allege that Defendant violates BIPA by failing to: (1) properly inform Plaintiffs and Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used; (2) provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and the Class's fingerprints; and (3) receive a written release from Plaintiffs or the members of the Class to collect, capture, or otherwise obtain their fingerprints. Am. Compl. ¶ 7; 740 ILCS 14/10(a)–(b).

As stated above, Plaintiffs' claims arise under BIPA, 740 ILCS 14/5 to 14/25, which Illinois adopted in 2008. As the Seventh Circuit recently noted in *Fox v. Dakkota Integrated Sys., LLC*, this law applies to all biometric identifiers, which the statute defines to include "fingerprint[s]." No. 20-2782, --- F.3d ---, 2020 WL 6738112, at *2–3 (7th Cir. Nov. 17, 2020) (citing 740 ILCS 14/10). Before obtaining any

---

[2]As discussed in more detail herein, the Court construes Defendant's motion as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. When evaluating a motion under Rule 12(b)(1), and "external facts call the court's jurisdiction into question, [the court] may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citations omitted).

handprint, a "private entity" must inform the subject or "the subject's legally authorized representative" in writing about several things, such as the purpose of collecting the data and how long they will be kept, and also obtain the consent of the subject or authorized representative. 740 ILCS 14/15(b). The private entity also must establish and make available to the public a protocol for retaining and handling biometric data, which must be destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). Sales of biometric information are forbidden, 740 ILCS 14/15(c), and transfers are limited, 740 ILCS 14/15(d). Private entities must protect biometric information from disclosure. 740 ILCS 14/15(e).

During the period that Defendant collected and used Plaintiffs' fingerprints until Plaintiffs left their jobs at Defendant, Plaintiffs were members of the Miscellaneous Warehousemen, Airline, Automotive Parts, Service, Tire and Rental, Chemical and Petroleum, Ice Paper and Related Clerical and Production Employees Union, Local No. 781 (the Union). Wilson Decl. ¶¶ 5–6. The Union represented Plaintiffs for purposes of collective bargaining with Defendant. *Id.* ¶ 5. The collective bargaining agreements (CBAs) in effect during the relevant time period contain identical management rights clauses. *Id.*, Exhs. A–C, Art. II. The CBAs also include a grievance procedure for resolution of disputes as to the interpretation and application of the CBAs, with the dispute culminating in arbitration before the Federal Mediation and Conciliation Service. *Id.* Art. XX.

3

Plaintiffs originally filed their complaint in the Circuit Court of Cook County, R. 1-1, which Defendant then removed to this Court. R. 1. Plaintiffs moved to remand this action to state court, R. 54—and subsequently filed a renewed motion for remand, R. 81—arguing that there was neither standing nor subject matter jurisdiction. Defendant opposed both remand motions, arguing, among other things, that (1) Article III standing exists over Plaintiffs' claims because, under the CBAs, Plaintiffs' BIPA claims could result in additional pay or benefits or in the elimination of the complained-of fingerprint scanning practice, and (2) the Court has subject matter jurisdiction based on complete preemption under the Labor Management Relations Act (LMRA) because Plaintiffs' BIPA claim requires interpretation of the CBA. R. 82 at 4–5, 8–9 (citing *Miller v. Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019)). The Court[3] agreed with Defendant as to both arguments based on the CBAs and denied Plaintiffs' motion for remand. R. 99, Apr. 10, 2020 Opinion (relying on *Miller*, 926 F. 3d 898). Defendant subsequently moved to dismiss Plaintiffs' amended complaint, arguing that Plaintiffs' claims are preempted by the LMRA. Def.'s Mot. Dismiss; R. 103, Def.'s Mot. Dismiss Br.

## Legal Standard

Defendant does not specify under which section of Federal Rule of Civil Procedure 12 it moves to dismiss, but rather relies on the Seventh Circuit's direction in *Miller* that a "dismissal based on labor law preemption should be labeled as a judgment on the pleadings under Fed. R. Civ. P. 12(c) or a dismissal for lack of subject

---

[3]This case was previously assigned to Judge Alonso. It was reassigned to this Court on September 28, 2020. R. 109.

matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." Def.'s Mot. Dismiss Br. at 3 (citing *Miller*, 926 F.3d at 901). As other courts[4] in this District have done in factually similar cases, the Court construes the motion as one brought under Rule 12(b)(1) for lack of subject matter jurisdiction.

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor*, 875 F.3d at 853 (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3 at 444 (internal citations omitted).

---

[4]*See Williams v. Jackson Park SLF, LLC*, 2020 WL 5702294, at *2 (N.D. Ill. Sept. 24, 2020); *Gray v. Univ. of Chicago Med. Ctr., Inc.*, 2020 WL 1445608, at *2 (N.D. Ill. Mar. 25, 2020); *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *2 (N.D. Ill. Feb. 26, 2020).

## Discussion

### I.   The LMRA Preempts Plaintiffs' BIPA Claims

Section 301 of the LMRA, 29 U.S.C. § 185 preempts a state law claim if resolution of the claim "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413 (1988). This preemption encompasses "claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *see Miller*, 926 F.3d at 904; *Williams v. Jackson Park SLF, LLC*, 2020 WL 5702294, at *2 (N.D. Ill. Sept. 24, 2020); *see also Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013) (Section 301 preemption "covers not only obvious disputes over labor contracts, but also any claim masquerading as a state-law claim that nevertheless is deemed 'really' to be a claim under a labor contract").

Similarly to its opposition to Plaintiffs' motion for remand, Defendant again argues that Plaintiffs' claims are preempted by Section 301. But instead of opposing remand to state court, Defendant now asks the Court to dismiss Plaintiffs' claims based on Section 301 preemption. In response, Plaintiffs argue that *Miller* is distinguishable—and should that endeavor fail, invite the Court to overturn *Miller*. The Court, however, finds that the facts at issue in *Miller* are nearly identical to those before the Court. The Court, contrary to Plaintiffs' suggestion, is bound to follow

Seventh Circuit precedent and finds therefore, that under *Miller*, Plaintiffs' claims are preempted and must be dismissed.[5]

In *Miller*, the two defendant-employers, Southwest Airlines and United Airlines, required union member-employees to use their fingerprints to clock in and out of work. 926 F.3d at 901. The plaintiffs-employees claimed Southwest and United violated BIPA by implementing the timekeeping "systems without their consent, fail[ing] to publish protocols, and us[ing] third-party vendors to implement the system." *Id.* Southwest and United both moved to dismiss, arguing that they had provided the plaintiffs' unions with the required notice and that the unions consented to the use of the fingerprint system either explicitly or through the collective bargaining agreements' management rights clauses. *Id.* The Seventh Circuit began its analysis with the premise that disputes over the interpretation or administration of a collective bargaining agreement with an airline must be resolved by an adjustment board under the Railway Labor Act (RLA). *Id.* at 903. It held that "there can be no doubt that how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of bargaining." *Id.* 903. Therefore, it held that the plaintiffs' BIPA claims, premised on the use of their

---

[5]Plaintiffs make no attempt to distinguish their cause of action for negligence from their BIPA count. But as Defendant correctly points out, Plaintiffs' negligence claim is based on the same conduct at the heart of their BIPA claim. Am. Compl. ¶¶ 64–69. As such, it must rise or falls along with their BIPA claim. *See Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015) (a state law claim requires the interpretation of a collective bargaining agreement even where a single element of the claim requires a court to interpret any term of a collective bargaining agreement); *see also Frisby v. Sky Chefs, Inc.*, 2020 WL 4437805, at *4 (N.D. Ill. Aug. 3, 2020) (BIPA claim and related negligence claim both preempted by the Railway Labor Act).

fingerprints to track their hours, "necessarily entail[ed] the interpretation or administration of the collective bargaining agreement" and were preempted by the RLA. *Id.* at 904.

Plaintiffs contend that *Miller* is distinguishable because preemptive intent is more readily inferred under the RLA than the LMRA. R. 105, Pls.' Resp. Br. at 11–12. But the Supreme Court has held that the RLA preemption standard is "virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA." R. 106, Def.'s Reply Br. at 2–3; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). And the Seventh Circuit recently suggested that its holding in *Miller* applied to an analogous fact pattern under the LMRA. *Fox*, No. 20-2782, --- F.3d ---, 2020 WL 6738112, at *8 (declining to hold that union member plaintiff's BIPA claim was preempted by the LMRA because the district judge did not address the issue and the parties did not brief it, but stating that "the answer appears to flow directly from *Miller*").

Plaintiffs rely on *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21–22 (1987) to argue that their BIPA claims are not preempted because the "*ability* to bargain over statutory rights is insufficient, alone, to justify preemption." Pls.' Resp. Br. at 12–13. The Court agrees with Defendant that Plaintiffs' reliance on *Fort Halifax* is misplaced.

In *Fort Halifax*, an employer who laid off numerous employees was required by state statute to provide a one-time severance payment to those laid off workers. 482 U.S. at 3. The employer, however, argued that the statute was preempted by the

National Labor Relations Act (NLRA)—as well as by the Employee Retirement Income Security Act of 1974 (ERISA)—because it implicated economic regulations through its effect on the bargaining activities of the parties. *Id.* at 7, 19–20. The Supreme Court disagreed, holding that merely because the state statute pertained to matters over which the parties are free to bargain, that was an insufficient basis to support a claim for preemption. *Id.* at 21–22. In so holding, the Supreme Court analyzed "the strand of NLRA pre-emption analysis that prohibits States from imposing additional restrictions on economic weapons of self-help." *Id.* at 19. But the analysis for LMRA preemption based on the interpretation of a management-rights clause is different: Where an employer advances a "nonfrivolous argument" that the complained-of conduct was authorized by a management-rights clause, the claim cannot be resolved without interpretation of the agreement and is thus preempted. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993). *Miller* applied the standard set forth in *Brazinski* and considered whether the resolution of the plaintiffs' BIPA claims would require interpretation of the collective bargaining agreement, and held that it would. 926 F.3d at 904. As Defendant points out, the Seventh Circuit did not base its holding on a misconception that states are completely foreclosed from regulating on any topic that *may* be collectively bargained. Instead, it correctly recognized that "there can be no doubt that how workers clock in and out is … a mandatory subject of bargaining" and that a state cannot remove a union's power to bargain such a topic. *Miller*, 926 F.3d at 904; Def.'s Reply Br. at 4.

9

Plaintiffs insist that Defendant blindly relies on *Miller*, and forgoes a "case-by-case analysis of the plaintiffs' state law claims, as they relate to the applicable CBA." Pls.' Resp. Br. at 3 (citing *In re Bentz Metal Products Co., Inc.*, 253 F.3d 283 (7th Cir. 2001)). But as discussed above, Plaintiffs' BIPA claims are nearly identical to those brought by the plaintiffs in *Miller*—as well as those in *Williams*, 2020 WL 5702294, *Gray v. Univ. of Chicago Med. Ctr., Inc.*, 2020 WL 1445608 (N.D. Ill. Mar. 25, 2020); *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202 (N.D. Ill. Feb. 26, 2020). And Defendant correctly points out that the relevant CBA language is nearly identical here as the language at issue in *Miller*. *Compare* Wilson Decl., Exhs. A–C Art. II (Defendant's CBA stating, "The Employer shall have the right to manage the business efficiently and profitably including but not limited to the direction of forces … .") *with Miller v. Southwest Airlines Co.*, Case No. 18-3476 (7th Circuit), ECF No. 20 at Appendix 29 ("The right to manage and direct the work force, subject to the provisions of this Agreement, is vested in and retained by the Company."). But Plaintiffs do not identify how this case meaningfully differs from *Miller* and its recent district court progeny. Therefore, applying binding Seventh Circuit precedent to the specific facts of this case mandates that this Court hold that the LMRA preempts Plaintiffs' BIPA claims.

Finally, at least three courts within this District have examined the similarity of the RLA and LMRA preemption standards and have held that *Miller* applies to nearly identical BIPA claims, which are preempted by the LMRA. *See Williams*, 2020 WL 5702294, at *3; *Gray*, 2020 WL 1445608, at *3; *Peatry*, 2020 WL 919202, at *3.

In *Williams*, the plaintiff worked as a nurse technician whose employer required employees, including the plaintiff, to scan their handprints to clock in and out of work. 2020 WL 5702294, at *1. Apart from his first 30 days, during his employment the plaintiff was a member of a union that was the sole bargaining agent for its members under a CBA. *Id.* Similarly, the plaintiff in *Gray* was a nurse who worked for the defendant and was represented by a nurses' union, which was the exclusive bargaining agent for plaintiff and other nurses. 2020 WL 1445608, at *1. The plaintiff's duties included using a machine to dispense medication, which required employees to use their handprint as a means of authentication to access the medication. *Id.* Finally, in *Peatry*, the plaintiff worked at a manufacturing company from 2016 to 2019, which was purchased by the defendant in 2018. 2020 WL 919202, at *1–2. During her employment, the plaintiff was required to scan her fingerprints to clock in and out of work. *Id.* at *2. When the defendant purchased the manufacturing company, it entered into a CBA with a worker's union that included the plaintiff. *Id.*

In all three cases, the unionized employee plaintiffs alleged, on behalf of themselves and classes of similarly situated individuals, that the employer defendants violated BIPA by: (1) failing to provide a retention schedule and guidelines for permanently destroying the plaintiffs and the class's biometric information under § 15(a); (2) failing to obtain informed written consent and release before obtaining employees' biometric identifiers under § 15(b); and (3) failing to obtain consent from plaintiffs and the class to disclose their biometric data to a third

party under § 15(d). *Williams*, 2020 WL 5702294, at *1; *Gray*, 2020 WL 1445608, at *4; *Peatry*, 2020 WL 919202, at *1. In each case, the district court held that the facts at issue were indistinguishable from those in *Miller* and the preemption standards under the RLA and LMRA are "virtually identical." *Williams*, 2020 WL 5702294, at *3; *Gray*, 2020 WL 1445608, at *4; *Peatry*, 2020 WL 919202, at *3. Therefore, each court dismissed the plaintiffs' claims as preempted under the LMRA. True, as Plaintiffs point out, these district court opinions are not binding on this Court. Pls.' Resp. Br. at 10 n.2. However, the Court finds *Gray*, *Peatry*, and *Williams* (issued after the parties had finished briefing the motion to dismiss), to be well-reasoned and supported by Supreme Court and Seventh Circuit law, despite Plaintiffs' arguments to the contrary.

Plaintiffs argue that the Court should depart from *Miller*, which is binding Seventh Circuit precedent, as well as from persuasive authority from within this District, and instead adopt the approach advanced in two state court decisions. Pls.' Resp. Br. at 7, 11–12 (citing *Winters v. Aperion Care Inc.*, 19-CH-6579 (Ill. Cir. Ct. Feb. 11, 2020); *Walton v. Roosevelt University*, 19-CH-04176 (Ill. Cir. Ct. May 5, 2020)).

These Illinois state courts are not bound by Seventh Circuit precedent as is this Court. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (district judges must follow the decisions of the Seventh Circuit whether or not they agree). Moreover, *Winters* was decided before *Williams*, *Gray*, or *Peatry* were issued, so the *Winters* court did not have the benefit of the district courts' application

12

of *Miller*'s holding to preemption under the LMRA. In distinguishing *Miller*, *Walton* merely adopted the reasoning of *Winters*.

In sum, this Court, unlike the state courts, is bound to follow *Miller*, which requires the Court to find that Plaintiffs' BIPA claims are preempted. This conclusion is bolstered by the recent well-reasoned District Court decisions which have also held in nearly factually identical cases that the plaintiffs' BIPA claims were preempted by the LMRA.

## II.    Plaintiffs' Section 15(a) Claims are Also Preempted

Plaintiffs make two arguments specific to their claims under Section 15(a) of BIPA—which governs Defendant's retention and destruction policy—that Plaintiffs contend require the Court to remand their Section 15(a) the claims to state court for lack of subject matter jurisdiction. Pls.' Resp. Br. at 13–14. But neither of Plaintiffs' theories are persuasive and their Section 15(a) claims must fail with their other BIPA claims.

### A.  Post-Employment Claims

First, Plaintiffs insist that their Section 15(a) claims did not accrue until 2018 at the earliest, after they were no longer employed by Defendant, and therefore these claims are not governed by the CBAs. Pls.' Resp. Br. at 13. As such, Plaintiffs argue that these claims are not preempted by Section 301 of the LMRA. Even if Plaintiffs' claims accrued after their employment with Defendant had ended, they relate back to their employment, union membership, and the collection and retention of their biometric data. *See* Am. Compl. ¶ 30 ("Kerry fails to provide its workers with a

13

written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' biometric data when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. A worker who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Kerry's databases - or if they ever will be."). Plaintiffs were members of the Union while employed by Defendant, and the Union acted as their legally authorized representative for BIPA purposes. Defendant cannot allegedly retain unlawfully Plaintiffs' biometric data without collecting and possessing the data. Accordingly, whether Plaintiffs, through Union representation, consented to the retention of their biometric data subsequent to employment is subject to the management-rights provisions in the CBA requires the Court to ascertain whether and when the initial purpose for collecting the data has been satisfied. 740 ILCS 14/15(a); *see Miller*, 926 F.3d at 903 ("[T]he retention and destruction schedules for biometric data … are topics for bargaining between unions and management."); *see also Fox*, --- F.3d ---, 2020 WL 6738112, at *7–8 (Article III standing existed over Section 15(a) claims filed by union member after employment with defendant had ended, because the union could have bargained to make "material improvements in the way BIPA was implemented," including about the retention of plaintiff's biometric data, so "*Miller*'s reasoning applie[d] with equal force").

Another court in this District recently rejected the plaintiffs' attempt to bypass RLA preemption by paring back their BIPA claims under Sections 15(b) and (d) to a period of employment postdating their union membership when they were not

covered by a collective bargaining agreement. *Crooms v. Sw. Airlines Co.*, 459 F. Supp. 3d 1041, 1049–50 (N.D. Ill. 2020). The court pointed out that the allegations in the amended complaint repeatedly referred to the collection and possession of biometric data when the plaintiffs were union members. *Id.* at 1044, 1050 (adding that plaintiffs' position is especially tenuous given the allegations in their own complaint wherein they allege enrollment and scanning their fingerprints "when Southwest hires an employee"). Although Plaintiffs here argue that their post-employment Section 15(a)—rather than Section 15(b) or (d)—claims avoid preemption, the principle in *Crooms* applies nonetheless, because as noted above, Plaintiffs' claims relating to the retention or destruction schedules of their fingerprints necessarily relates back to the collection of their fingerprints while the Union was their legally authorized representative. *See also Williams*, 2020 WL 5702294, at *4 (rejecting plaintiff's argument that LMRA preemption did not apply to his BIPA claims because he was not a union member at the beginning of his employment, reasoning "he was a union member for the majority of his employment"); *contra Darty v. Columbia Rehab. & Nursing Ctr., LLC*, 2020 WL 3447779, at *2 (N.D. Ill. June 24, 2020) (LMRA did not preempt plaintiff's BIPA claims because named plaintiff had *never* been a union member, even though proposed class included union members).

Plaintiffs point out that the court in *Peatry* dismissed the plaintiff's claims arising from the defendant's alleged BIPA violations the defendant committed before a collective bargaining agreement between the defendant and plaintiff's union went

into effect. *Peatry*, 2020 WL 919202, at *3, *5. But *Peatry*'s pre-collective bargaining agreement claims necessarily could not have been the subject of bargaining between the defendant and the union under a collective bargaining agreement, whereas, here, Plaintiffs' post-employment claims arise out of Defendant's alleged collection and retention of Plaintiffs' fingerprints that occurred during their employment and were properly the subject of bargaining between the Union and Defendant. The LMRA thus preempts Plaintiffs' post-employment Section 15(a) claims.

## B. Article III Standing Over Section 15(a) Claims

Despite the Court's earlier rejection of Plaintiffs' motion to remand based on Article III standing, Plaintiffs renew their argument with regard to the Section 15(a) claims, relying on a case published after the court denied their remand motion. Pls.' Resp. Br. at 14 (citing *Bryant v. Compass Grp. USA Inc.*, 958 F.3d 617, 626 (7th Cir. 2020)).

In *Bryant*, the plaintiff sued the defendant, the owner and operator of vending machines located in her work place cafeteria, accusing the defendant of violating BIPA. 958 F.3d at 619–20. The vending machines did not accept cash. *Id.* at 620. Instead, to access the machines, customers had to establish a user account by scanning their fingerprints and setting up a payment line. *Id.* Thereafter, they could make purchases using a fingerprint scanner on the machines. *Id.* The plaintiff set up an account and made purchases from the vending machine. *Id.* at 620. The plaintiff alleged that the defendant violated Section 15(a), the public disclosure requirement, and Section 15(b), the consent requirement, of BIPA. *Id.* at 619. The Seventh Circuit

16

determined that the duty to disclose under Section15(a) "is owed to the public generally, not to particular persons whose biometric information the entity collects." Therefore, the Seventh Circuit held that an alleged Section 15(a) violation is procedural and does not create a concrete and particularized injury sufficient to confer Article III standing. *Id.*

But the Seventh Circuit recently clarified that its holding in *Bryant* was limited: "Bryant's claim was extremely narrow, alleging *only* a violation of the section 15(a) duty to *publicly disclose* data retention and destruction protocols." *Fox*, --- F.3d ---, 2020 WL 6738112, at *6. Here, as in *Fox*, Plaintiffs allege a broader violation than that in *Bryant*; they claim that Defendant not only failed to develop and publicly disclose guidelines regarding the retention and destruction of employees' biometric data, but also failed to *comply* with a retention or destruction schedule. *See* Am. Compl. ¶ 30. By alleging that Defendant unlawfully retained Plaintiffs' fingerprints after they left their jobs with Defendant, Plaintiffs have alleged a concrete and particularized injury sufficient to confer standing. *Fox*, --- F.3d ---, 2020 WL 6738112, at *6–7.

What's more, *Fox* confirmed that *Bryant* did not disturb *Miller*'s holding that unionized employees have a separate basis for standing for Section 15(a) claims against their employer. --- F.3d ---, 2020 WL 6738112, at *7–8 (relying on *Miller* to hold that union employee had standing to bring Section 15(a) claim "because the collection, use, and retention of biometric data are topics for collective bargaining and could be used to win offsetting concessions on wages or other topics") (citing *Miller*,

926 F.3d at 902). As in *Miller* and *Fox*, Plaintiffs have standing to litigate their Section 15(a) claims in federal court. Therefore, the Court maintains jurisdiction over Plaintiffs' Section 15(a) claims, which are preempted by the LMRA.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiffs' Amended Complaint is granted. Plaintiffs' Amended Complaint is dismissed without prejudice.[6] Plaintiffs have until December 20, 2020 to file a Second Amended Complaint if they can do so consistent with Rule 11. If no Second Amended Complaint is filed on or before December 20, 2020, the Court will enter a final judgment in favor of Defendant and close the case.

Franklin U. Valderrama
United States District Judge

DATED: November 30, 2020

---

[6]A preempted state law claim "must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Employees must exhaust administrative remedies before bringing suit in federal court unless certain exceptions apply. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001); *Gray*, 2020 WL 1445608, at *5. The amended complaint does not contain allegations that allow the Court to treat Plaintiffs' claims as § 301 claims, nor does it allege that Plaintiffs properly exhausted their administrative remedies. However, the Court cannot conclude, based on the information currently before it, that there are no other facts Plaintiffs can plead that establish a non-preempted claim. *See Williams*, 2020 WL 5702294, at *5 (allowing plaintiff "a final attempt to amend his individual and, if possible, class complaint if he can do so consistent with Rule 11"); *see also Gray*, 2020 WL 1445608, at *5 (dismissing complaint without prejudice); *Peatry,* 2020 WL 919202 (allowing certain claims to proceed that predated date when collective bargaining agreement governing plaintiff's employment went into effect).

18